**E-FILED**
Tuesday, 09 August, 2016  12:41:54 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| **MONSANTO PRODUCTION SUPPLY LLC,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 3:16-cv-3038** |
| **RICK ROSENTRETER and DOUGLAS ROSENTRETER,** | ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER AND OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Plaintiff Monsanto Production Supply LLC develops and produces soybean seeds that contain patented biotechnologies (d/e 1 at ¶ 13).  Defendant Rick Rosentreter, a farmer, plants and farms soybeans in Central Illinois.  In early 2016, Monsanto sued Rosentreter for allegedly using Monsanto's proprietary seeds without authorization, interfering with Monsanto's contractual relations, and being unjustly enriched as a result (d/e 1).  Monsanto later amended its complaint to add Rosentreter's brother

Doug Rosentreter—whom the Court will refer to in this opinion as simply "Doug"—as a co-defendant.

From the beginning of the litigation, Rosentreter has obstructed the discovery process, misrepresented facts to Monsanto and to the Court, and disobeyed the Court's direct discovery orders. Ultimately, Monsanto filed a motion for sanctions asking the Court to enter default judgment against Rosentreter and to permanently enjoin Rosentreter from using any soybean seed containing Monsanto technology.  Pursuant to the Court's oral ruling on July 15, 2016, the motion for sanctions (d/e 45) is GRANTED IN PART and DENIED IN PART.  The Court will enter default judgment against Rosentreter and a <u>temporary</u> injunction barring Rosentreter from using any soybean seed containing Monsanto technology.

**I.    Rosentreter has repeatedly misrepresented facts to the Court and disobeyed the Court's discovery orders.**

Monsanto sued Rosentreter on February 9, 2016.  Immediately after filing the lawsuit, Monsanto asked the Court for leave to serve expedited discovery on Rosentreter and for a protective order preventing spoliation of evidence.  On February 10, 2016, the Court authorized Monsanto to serve expedited discovery and ordered

Rosentreter not to "destroy[] evidence from soybean fields upon which he harvests soybeans" (d/e 7).

Once the Court authorized Monsanto to serve expedited discovery on Rosentreter, Monsanto served its First Set of Interrogatories, which required Rosentreter to identify all of the soybean acres he farmed in 2015.  Monsanto also served Rosentreter with document production requests and with a request to enter Rosentreter's land to collect samples from his soil and from his storage units.  (Pl.'s Discovery Requests (d/e 4-1).)

In response to Monsanto's discovery requests, Rosentreter produced some documents, but his attorney told Monsanto that Rosentreter "did no farming in 2015" and "likewise had utilized no storage facilities."  (Feb. 23, 2016 Spooner email (d/e 15-3).)  This assertion contradicted records from the Farm Service Agency—some of which Rosentreter himself had produced—showing that Rosentreter did, in fact, farm in 2015.  (Producer Farm Data Report (d/e 45 Ex. 4) (listing land on which Rosentreter farmed soybeans).)  Indeed, Rosentreter identified in his production 351 soybean acres, or about 20% of Rosentreter's 1,544.06 acres that Monsanto ultimately discovered.  (Def.'s Discovery Responses (d/e 15-2);

Disclosed and Undisclosed 2015 Soybean Acreage (d/e 45-1 at 4-5).)

Two weeks later, on February 26, 2016, Monsanto filed a motion to compel and show cause (d/e 14). Monsanto asked the Court to order Rosentreter: (1) to fully respond to Monsanto's expedited discovery requests; (2) to produce all responsive documents; (3) to allow Monsanto access to Rosentreter's fields and storage containers; (4) to show cause as to why sanctions should not be imposed; and (5) to pay Monsanto's costs and fees.

Regarding Monsanto's document requests, Rosentreter responded that "there is literally nothing in [Rosentreter's] possession, custody or control [that] has not already been produced" (d/e 16 at 3). Regarding Monsanto's access to Rosentreter's fields and storage units, Rosentreter wrote that he "has neither an ownership nor a leasehold interest" in the property at issue and "cannot fully authorize [Monsanto's] entrance" (d/e 16 at 4).

The Court denied Monsanto's motion on the ground that the motion practice reflected possible confusion or failure of communication between counsel. (See Mar. 3, 2016 text order.)

Eight days later, on March 11, 2016, Monsanto filed a renewed emergency motion to compel and show cause (d/e 20). Monsanto accused Rosentreter of failing to comply with the Court's February 10, 2016 order and of making misrepresentations both to the Court and in his discovery responses. "Not only has [Rosentreter] refused to identify all his soybean acres for 2015," Monsanto wrote, "he has misrepresented to this Court that he cannot grant access to those fields because, as he represents, neither he nor any entity he is affiliated with has any leasehold rights in those farms. In fact, he did in 2015, and he does for 2016" (d/e 20 at 1-2). Monsanto expressed its concern that the evidence showing whether Rosentreter had used Monsanto's proprietary seed technology would be lost forever unless relief were granted before the 2016 farming season began. Monsanto asked the Court to order Rosentreter to (1) fully identify his soybean acres for 2015 and (2) provide immediate access to those fields and to the storage bins from his 2015 harvest.

On March 17, 2016, the Court held a hearing on Monsanto's renewed motion to compel. Rosentreter did not appear personally, but his attorney Scott Spooner appeared on his behalf. At the

hearing, Monsanto's attorneys summarized why they believed Rosentreter was misrepresenting his farming activities and his ability to allow Monsanto onto the farmland in question to procure samples.  Rosentreter's lawyer responded, "I can tell you this.  My client insists … that he did absolutely no farming in calendar year 2015 and that he has no leases for any property in 2015 or 2016." (Mar. 17, 2016 Tr. (unofficial).)

The Court concluded that the issue came down to Monsanto's allegation that Rosentreter had farmed the land in question versus Rosentreter's flat denial.  The Court scheduled a contempt hearing for the following week and ordered Rosentreter to bring witnesses who would corroborate Rosentreter's version of events.  The Court granted Monsanto's motion to compel and ordered Rosentreter to allow Monsanto's counsel access onto all land Rosentreter planted or farmed in 2015; to request immediate access to any of the land Rosentreter could not provide immediate access to; and to notify each landowner that they are not authorized to destroy or remove any evidence from their soybean fields or storage containers before Monsanto could sample and inspect them.  (See Mar. 17, 2016 Order, d/e 27; Mar. 17, 2016 Tr. (unofficial) (The Court: "[M]y order

is he's to allow these gentlemen on the property. … And if he doesn't do it by Monday then he better be here with proof why he shouldn't be held in contempt of Court …. That would have to be the owners of the land.").)

At the contempt hearing on March 21, 2016, Rosentreter appeared and testified, although he brought no witnesses to corroborate his version of events as the Court had ordered.  On the stand, Rosentreter reiterated his claim that he did not farm in 2015 and that he could no longer provide access to any of the land he used to farm.  (Mar. 21, 2016 Tr. (d/e 41) at 18:3-19:11; 27:19-29:23.)  Rosentreter further claimed that he had transferred his lease rights to his brother Doug.  (Mar. 21, 2016 Tr. (d/e 41) at 47:2-23.)

At the conclusion of the hearing, the Court found that Rosentreter had not complied with the Court's discovery order and that Rosentreter's non-compliance increased the risk of evidence spoliation with each passing day.  (Mar. 21, 2016 Tr. (d/e 41 at 67:6-13); Mar. 22, 2016 Order (d/e 29).)  The Court found that, at a minimum, Rosentreter had the ability to ask his brother Doug to allow Monsanto to enter and sample the land at issue.  The Court

held Rosentreter in contempt and directed him to arrange, within 36 hours of the hearing, for Doug to give Monsanto consent to access and retrieve samples from the land at issue.  (Id.)

Rosentreter did not comply with the Court's order.  Instead, he submitted affidavits from three landowners—his cousin, his mother-in-law, and his brother—purporting to justify Rosentreter's refusal to grant access.  (Affidavits (d/e 30).)

The Court then entered an expanded protective order directing Rosentreter and his brother Doug not to destroy any evidence in the fields.  (Mar. 23, 2016 Order (d/e 36).)  But Rosentreter again disregarded the Court's order.  He destroyed the evidence in his fields by directing his associate Todd Foiles to—or failing to direct him not to—till several of the fields at issue.  (Chalfant Decl. (d/e 45-8).)

In addition to failing to comply with the Court's discovery orders, Rosentreter has repeatedly lied to Monsanto and to the Court.  For example, Rosentreter has repeatedly averred under oath that he ceased all farming operations in February 2015. (Rosentreter Decl. (d/e 17 Ex. 6), ¶¶ 13-14 ("[I]n approximately mid-February, 2015, Rosentreter Farms LLC lost its operating line of

credit …. [which] brought to cessation all of my prospective farming operations in 2015."); Rosentreter Decl. (d/e 21 Ex. 1), ¶ 7 ("[N]either I, nor Rosentreter Farms LLC, performed any farming operations in calendar year 2015."); Mar. 21, 2016 Tr. (d/e 41) at 28:2-4, 29:11-13 ("[T]he majority of [my] leases, the landowner went and acquired a new tenant [for 2015] … I have no way of knowing what the landowner, in fact, worked out for their specific lease").)

But in fact Rosentreter <u>did</u> farm in 2015 and, at the time of the events in question, planned to farm in 2016.  The FSA records, personally certified by Rosentreter in July 2015, show that Rosentreter planted soybeans at least on April 28 and 29, 2015 and on May 1 and 23, 2015.  (Producer Farm Data Report (d/e 45 Ex. 4) (listing properties planted to soybeans).)  Supporting this documentation, landowner Neil LuAllen averred that Rosentreter "paid me to farm [our] property in 2015 and has already paid me to farm it in 2016."  (LuAllen Decl. (d/e 45-8), ¶ 3.)  Likewise, landowner Matthew Slightom averred that Rosentreter had leased farmland known as the "Metzger farm" from 2014 to 2016, and that Rosentreter had signed a new lease in October 2015 to continue farming the same land from 2016 to 2018.  (Slightom Decl. (d/e 45-

6), ¶¶ 3-4.)  Similarly, landowner Kurtis Bellm reported to Monsanto's attorney that his family had cash rented approximately 200 acres of farmland to Rosentreter in 2015 and that Rosentreter had already paid to farm the same acreage in 2016.  (Masson Decl. (d/e 20-1), ¶ 8.)  And when Monsanto's attorney told landowner John Mavis that Rosentreter had claimed not to have farmed Mavis's acreage in 2015, Mavis expressed surprise.  (Masson Decl. (d/e 20-1), ¶ 4.)

Rosentreter also has claimed that he didn't have lease or access rights to the fields that he farmed in 2014.  (Resp. to Motion to Compel (d/e 17), ¶ 12 ("The real frustration in this case derives from Monsanto's unexpected discovery that [Rosentreter] does not have access to land which he last farmed [in] 2014.").)  But in fact Rosentreter had leased that very same acreage for 2016.  (Masson Decl. (d/e 20-1), ¶ 4 ("Mr. Mavis was surprised that Rosentreter would say that he didn't … have access to the acreage in 2016."); LuAllen Decl. (d/e 45-8), ¶ 3 (Rosentreter "has already paid me to farm [our property] in 2016").)

Rosentreter also has claimed that he had transferred his lease rights to his brother Doug.  (Mar. 21, 2016 Tr. (d/e 41) at 47:2-23.)

But the landowners averred that they never spoke with Doug and didn't know Doug.  Landowner Neil LuAllen averred, "I have never heard of or dealt with Doug Rosentreter."  (LuAllen Decl. (d/e 45-8), ¶ 3.)  Landowner Marilyn Best testified similarly.  (Best Dep. (d/e 51-1), 22:8-14 ("Q: But in terms of your acreage, you never dealt with Doug in 2014?  A: No.  Q: In 2015.  A: No.  Q: In 2016?  A: No.").)

Rosentreter further testified that the landlords "tacitly assumed" the leases once Doug began signing the checks.  (Mar. 21, 2016 Tr. (d/e 41) at 28:6-14.)  But the landlords have denied this.  (Masson Decl. (d/e 20-1), ¶ 4 ("[Landowner John] Mavis stated that he believed the check he received for 2016 may have come from Doug … but that the only person he agreed to lease to was Rick."); LuAllen Decl. (d/e 45-8), ¶ 3 ("I have never heard of or dealt with Doug Rosentreter."); Best Dep. (d/e 51-1), 22:8-14.)

Rosentreter's duplicity extended to acts of omission, as well.  At the contempt hearing, Rosentreter produced an old lease for the Metzger farm.  (Mar. 21, 2016 Tr. (d/e 41) at 15:20-23, 56:18-59:23.)  But Rosentreter failed to disclose his <u>current</u> lease for the

Metzger farm, for 2016 to 2018, which he had signed in October
2015.  (Slightom Decl. (d/e 45-6), ¶ 4.)

In sum, since this lawsuit began Rosentreter has repeatedly
misrepresented facts to the Court and to Monsanto, repeatedly
failed to comply with his discovery obligations, and repeatedly
disobeyed this Court's direct discovery orders.

## II.    Default judgment is the appropriate sanction for Rosentreter's actions.

From the outset of the litigation, Monsanto has sought above
all else to preserve the evidence in Rosentreter's fields so that the
seeds could be tested to see if they contain Monsanto's proprietary
technologies.  Rosentreter's actions have prevented Monsanto from
achieving that goal.  Rosentreter claimed that he did not farm any
land in 2015, when in fact he did.  Rosentreter claimed that he had
no ability to authorize Monsanto's access to the farmland in
question, when in fact he did.  And when the Court entered orders
in an effort to preserve the evidence in Rosentreter's fields,
Rosentreter disobeyed those orders.

Since February 2016, when Monsanto filed its complaint, the
farmland at issue in this case has been tilled, and the residue from

Rosentreter's 2015 farming operations has been destroyed. Consequently, there is no evidence to confirm or deny whether Rosentreter used Monsanto's proprietary seed technology as alleged in Monsanto's complaint. If Rosentreter's goal was to thwart Monsanto's efforts to preserve the evidence in his fields, he succeeded.

But in winning the battle, Rosentreter has lost the war. His conduct has left the Court with little choice but to grant Monsanto's request for default judgment. See Newman v. Metropolitan Pier & Exposition Auth., 962 F.2d 589, 591 (7th Cir. 1992) ("A [defendant's] failure to comply with discovery orders is properly sanctioned … by entry of a default judgment.").

The Court has the authority to enter a default judgment against a party who disobeys the Court's orders. Fed. R. Civ. P. 37(b)(2)(A)(vi) ("If a party … fails to obey an order to provide or permit discovery … the court … may … render[] a default judgment against the disobedient party …"). The purpose of this harsh sanction is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."

National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam) (no abuse of discretion in dismissing case due to respondents' "flagrant bad faith" and counsel's "callous disregard" of discovery responsibilities).  "The judicial system is premised on the honest, good faith efforts of the parties involved … Where honesty is replaced with falsehood, a party's right to litigate comes into question."  Domanus v. Lewicki, 288 F.R.D. 416, 419 (N.D. Ill. 2013) (quotation omitted), aff'd 742 F.3d 290 (7th Cir. 2014).  "Litigants who abuse the judicial process … by flouting court orders … should not be surprised to find themselves facing a default judgment."  Id. (citing Profile Gear Corp. v. Foundry Allied Indus., Inc., 937 F.2d 351, 352 (7th Cir. 1991) ("For a long time courts were reluctant to enter default judgments, and appellate courts were reluctant to sustain those that were entered … Those times are gone.") (quotation omitted)).

In considering a motion for default judgment, the Court assesses the conduct's egregiousness and "weigh[s] not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit."  Domanus, 288 F.R.D. at 420 (quoting e360 Insight, Inc. v.

Spamhaus Project, 658 F.3d 637, 643 (7th Cir. 2011)).  Further, a
court need not "fire a warning shot" before imposing a harsh
sanction such as default judgment.  Hal Commodity Cycles Mgmt.
Co. v. Kirsch, 825 F.2d 1136, 1139 (7th Cir. 1987).  An isolated or
inadvertent failure may not warrant default judgment, but "as soon
as a pattern of noncompliance with the court's discovery orders
emerges, the judge is entitled to act with swift decision." Newman,
962 F.2d at 591 (7th Cir. 1992).

Here, default judgment is the appropriate sanction for
Rosentreter's conduct.  Rosentreter has repeatedly and without
justification disobeyed the Court's clear discovery orders, and he
has repeatedly made false representations to Monsanto and to the
Court in an apparent effort to avoid his discovery obligations.  The
result has been the destruction of the evidence that previously
existed in Rosentreter's fields, which has prejudiced Monsanto's
ability to prove its claims in this lawsuit.  Default judgment is the
appropriate sanction for this behavior.  Newman, 962 F.2d at 591
(7th Cir. 1992) ("A [defendant's] failure to comply with discovery
orders is properly sanctioned … by entry of a default judgment.");
accord Domanus, 288 F.R.D. at 418, 422 (default judgment

appropriate due to "the serious and ongoing discovery abuses committed by these defendants .... no sanction short of a default judgment is likely to induce compliance .... Plaintiffs cannot reasonably be expected to try their case in the face of such intransigence").

Further, awarding default judgment in Monsanto's favor will "send a strong message to other litigants, who scheme to abuse the discovery process and lie to the Court, that this behavior will not be tolerated and will be severely punished." Quela v. Payco-General Am. Credits, Inc., No. 99-1904, 2000 U.S. Dist. LEXIS 6932, *24 (N.D. Ill. May 17, 2000).

Rosentreter argues that total non-compliance is necessary for a court to issue sanctions under Rule 37(d).  (Response Br. (d/e 48) at 19.)  But Rule 37(d) addresses a party's failures to respond to discovery requests.  Rule 37(b), by contrast, authorizes the Court to enter default judgment against a party who fails to obey a discovery order.  Fed. R. Civ. P. 37(b)(2)(A)(vi).  As explained above, Rosentreter has repeatedly failed to comply with this Court's discovery orders.

### III.   A permanent injunction would be premature without further evidence in the record.

Monsanto has also asked the Court to permanently enjoin Rosentreter—including any entity acting on his behalf or with which he is in any way affiliated—from making, using, selling, transferring, offering to sell or transfer, or handling any soybean or other seed containing Monsanto's patented biotechnology.

At oral argument, Rosentreter argued that entering such a permanent injunction would force him to abandon farming altogether due to the ubiquity of Monsanto seeds in the farming industry.  Given the limited evidence in the record on this issue, the Court declines to enter a permanent injunction at this time. Instead, the Court will enter a temporary injunction banning Rosentreter from using Monsanto's patented biotechnology, pending further hearing.

### IV.   Conclusion

For the reasons above, Monsanto's Motion for Sanctions is GRANTED IN PART and DENIED IN PART.  The Court ORDERS the following relief:

(1) Monsanto is AWARDED default judgment against Rick Rosentreter;

(2) Rick Rosentreter, including any entity acting on his behalf or with which he is in any way affiliated, is temporarily ENJOINED from making, using, selling, transferring, offering to sell or transfer, or handling any soybean or other seed containing Monsanto's patented biotechnology, from the date of this order until November 30, 2016, pending further hearing; and

(3) The parties are DIRECTED to confer and then inform the Court regarding a desired date for a hearing at which the Court will hear evidence regarding (a) Monsanto's damages and (b) the effect on Rosentreter of a permanent injunction.

ENTERED:  August 9, 2016

FOR THE COURT:          s/ Sue E. Myerscough
                        SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE