IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MONSANTO PRODUCTION SUPPLY LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 3:16-cv-03038 |
| RICK ROSENTRETER and DOUGLAS ROSENTRETER, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Plaintiff Monsanto Production Supply LLC's Motion for Permanent Injunction (d/e 63). Also before the Court is the determination of Plaintiff's damages.

**I. BACKGROUND**

In February 2016, Plaintiff filed a Complaint against Defendant Rick Rosentreter (hereinafter Defendant) alleging that Defendant improperly converted Plaintiff's proprietary seeds, interfered with Plaintiff's contractual relations, and was unjustly enriched as a result. On March 23, 2016, Plaintiff filed an

Amended Complaint (d/e 34) to add Defendant's brother, Douglas Rosentreter, as a defendant.

During the course of the litigation, Defendant obstructed the discovery process, misrepresented facts to Plaintiff and to the Court, and disobeyed this Court's direct discovery orders. As a result, the Court granted in part Plaintiff's Motion for Sanctions (d/e 45). The Court entered default judgment against Defendant and temporarily enjoined Defendant and any entity acting on his behalf or with which he is affiliated from making, using, selling, transferring, offering to sell or transfer, or handling any soybean or other seed containing Plaintiff's patented biotechnology. On March 24, 2017, the Court held an evidentiary hearing on Plaintiff's Motion for Permanent Injunction and on the amount of damages.

## II. PERMANENT INJUNCTION

### A. Legal Standard

Once the Court has entered a default judgment, as it has here, the Court takes all well-pleaded factual allegations in the Complaint as true. Yang v. Hardin, 37 F.3d 282, 286 (7th Cir. 1994).

A party seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that no adequate

remedy at law exists; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. Mercexchange, LLC, 547 U.S. 388, 391 (2006). Whether to grant a permanent injunction is within this Court's discretion. Weinberger v. Romero-Barcelo, 456 U.S. 305, 320 (1982).

## B. Analysis

1. <u>Plaintiff will suffer irreparable injury without a permanent injunction.</u>

A court may only issue a permanent injunction to address irreparable harm. Because a permanent injunction is a final judgment rather than a provisional remedy, the plaintiff must show actual success on the merits, as opposed to the likelihood of success for a preliminary injunction. Plummer v. Am. Institute of Cert. Public Accountants, 97 F.3d 220, 229 (7th Cir. 1996).

Patent infringement does not lead to a per se finding of irreparable injury, but the nature of intellectual property shall be a consideration of the Court in making that determination. eBay Inc. v. Mercexchange, LLC, 547 U.S. 388, 391 (2006) (vacating

injunction but finding that patent holder who only intends to license the patent rather than use it does not preclude a finding of irreparable injury—court must also consider how the plaintiff will use the injunction and the nature of the rights protected by the injunction). The Court shall consider that intellectual property protects ownership of unique property and whether the plaintiff intends to monetize the patent or simply charge others to use it. Id.

As a threshold matter, Plaintiff has had success on the merits by virtue of the default judgment.

Plaintiff argues that any additional infringement by Defendant would strip Plaintiff of the protection of its patent and the ability to control the spread of is patented technology. Plaintiff has shown that it will suffer irreparable injury without a permanent injunction due to the nature of the seed industry. Because seeds can proliferate exponentially, infringement could "cause widespread proliferation of plaintiffs' technology in a way that is almost impossible to monitor and redress." Monsanto Co. v. Hargrove, No. 4:09-cv-1628, 2011 WL 5330674, at *6 (E.D. Mo. Nov. 7, 2011) ("The ability of plaintiffs' seed technology to rapidly self-replicate is the reason that plaintiffs grant only limited, single-use licenses for
Page **4** of **18**

their products."). The potential for such a circumstance in this case satisfies the irreparable injury requirement for a permanent injunction.

2. <u>Plaintiff has established that legal remedies are inadequate.</u>

Next, money damages are inadequate to make Plaintiff whole. Legal remedies may be inadequate in variety of circumstances, including where Plaintiff would have to pursue a multiplicity of lawsuits for damages. <u>See</u> <u>Monsanto Co. v. Parr</u>, 545 F. Supp. 2d 836, 844 (N.D. Ind. 2008) ("Without injunctive relief, Monsanto would be in the position of having to repeatedly investigate and file lawsuits seeking damages against [the defendant] . . . ."); <u>Robert Bosch LLC v. Pylon Nfg. Corp.</u>, 659 F.3d 1142, 1155 (Fed. Cir. 2011) (legal remedy inadequate when "[t]here is no reason to believe that [defendant] will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent [a permanent] injunction.").

Plaintiff argues that money damages are inadequate because Defendant is likely to continue to infringe on Plaintiff's patented biotechnology absent a permanent injunction. Plaintiff argues that Defendant's conduct before and during litigation indicates the

likelihood that he will continue to infringe upon Plaintiff's proprietary seeds. In support of its position, Plaintiff cites to the facts that Defendant continued to sell and retain Plaintiff's seeds even after Plaintiff notified him that his actions violated patent law, that he willfully destroyed evidence, and that he lied to this Court. See Hargrove, 2011 WL 5330674, at *6 ("[D]efendants' willful infringement and uncooperative conduct during this litigation demonstrates the likelihood that they will continue to infringe" absent an injunction.).

The Court finds that Plaintiff's available legal remedies are insufficient to make Plaintiff whole. The nature of seed reproduction suggests that multiple lawsuits could be necessary each time the seed is wrongfully replanted and resold. Further, given the ongoing nature of Defendant's infringement in this case, including allowing Monsanto seeds to be planted and stored on his land, refusal to return the seeds, and selling and replanting the seeds without authorization, Defendant is likely to continue to infringe on Plaintiff's property. Defendant's refusal to cooperate in discovery during the course of this litigation further supports this finding.

3. <u>The balance of the hardships weighs in favor of granting the permanent injunction.</u>

The third element of a permanent injunction requires the Court to weigh the hardships to the plaintiff in the absence of an injunction against the hardships to the defendant if an injunction is issued. The Court granted the temporary injunction in part to further develop the record as to whether the ubiquity of Monsanto's seeds would force Defendant out of farming. Order d/e 57 at 17.

Plaintiff asserts that numerous varieties of soybean and corn seeds that do not contain Monsanto's biotechnology are available to Defendant such that he can continue to farm without using Plaintiff's technology. Plaintiff cites to the University of Illinois' annual seed trials for corn and soybeans to argue that 27 conventional varieties of soybean, 25 varieties of Liberty Link soybean, and 8 varieties of non-GMO corn are available to Defendant, all without Plaintiff's technology. Plaintiff's Motion for Permanent Injunction (d/e [63]) at 10 n.3.

Plaintiff alternatively argues that, even if a permanent injunction prevented Defendant from farming altogether, that harm does not outweigh the harm to Plaintiff in the absence of an

injunction, especially where, as here, Defendant knowingly based his business on an infringing product.  See Broadcom Corp. v. Qualcomm, Inc., 543 F.3d 683, 704 (Fed. Cir. 2008) ("[O]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003. n.12 (Fed. Cir. 1986) (district court abused its discretion in refusing to enjoin defendant on grounds it might put defendant out of business).

      The Court finds that the balance of the hardships weighs in favor of granting a permanent injunction.  The injunction will not force Defendant to abandon farming altogether.  Plaintiff has established that over 50 varietals of soybean and corn seeds are available regionally that do not contain Monsanto's biotechnology.  Further, at the hearing on this motion, Defendant testified that he has been engaging in custom-work farming since this Court issued the temporary injunction, supporting the conclusion that Defendant will not be shut out from farming altogether if the Court grants the permanent injunction.  The injunction is further justified because Defendant engaged in the farming at issue in this case knowing

that it violated Plaintiff's intellectual property.  See United States v. Diapulse Corp. of Am., 457 F.2d 25, 29 (2nd Cir. 1972) (finding that one "can have no vested interest in a business activity found to be illegal.").

     Further, Defendant's interests are undermined by the fact that Defendant was prohibited from using Monsanto seeds beginning in May 2011.  If Defendant were a rule-abiding farmer, he would not have used Monsanto seeds even before Plaintiff filed this lawsuit and would not have used Monsanto seeds following the conclusion of this case without Plaintiff's approval or removal of the prohibition.  Accordingly, although the permanent injunction will enhance the severity and enforcement of the prohibition, it does not create a new burden on Defendant.  See, e.g., RPA Int'l PTY Ltd. v. Compact Int'l Inc., No. 06-cv-1147, 2010 WL 3184311, at *10 (S.D. Cal. Aug. 11, 2010) (balance of hardships weighs in favor of plaintiff because "[f]ailure to grant an injunction will make it more difficult for Plaintiffs to prevent further infringement of their patent [and] [t]he only harm to Defendants will be the loss of income from selling the infringing chairs.").

On the other hand, without an injunction, Plaintiff will be prevented from fully protecting its intellectual property. See Monsanto Co. v. Scruggs, 249 F. Supp. 2d 746, 760 (N.D. Mass. 2001) ("Notwithstanding the testimony regarding the deleterious effect an injunction might have, . . . Monsanto is not obligated to afford the defendants the opportunity to sell its products."). The balance is further weighted in favor of Plaintiff in light of the cost of the research and development required to produce the infringed upon biotechnology and the cost and difficulty of protecting the intellectual property. See Monsanto Co. v. Bowman, 686 F. Supp. 2d 834, 837 (S.D. Ind. 2009) ("[D]espite [the defendant's] compelling policy arguments addressing the monopolizing effect of [the presence of Monsanto's seed], he has not overcome the patent law precedent which breaks in favor of Monsanto with regard to its right to patent protection . . . .").

4. <u>The public interest will not be disserved by the issuance of a permanent injunction.</u>

Finally, a permanent injunction must not disserve the public interest. Plaintiff argues that a permanent injunction would serve the public interest by enforcing the law and prohibiting a wrongful

infringer from profiting at the expense of the holder of a lawful patent. See Scruggs, 249 F. Supp. 2d at 760 (in granting preliminary injunction, court noted "[t]he public interest is not served by allowing an infringer to profit at the expense of the holder of a lawfully issued patent.").

Plaintiff also argues that Defendant's actions in taking the seeds, if continued, would hurt the interests of law-abiding farmers who use Monsanto seeds by increasing the illegal supply of patented seeds by hindering their competitive edge.

The Court finds that no public interest will be disserved by the permanent injunction, which will support the public interest in enforcing lawful patents and protecting law-abiding farmers.

### C. Conclusion

Because Plaintiff has met each of the elements required for a permanent injunction, Plaintiff's request for a permanent injunction (d/e 63) is GRANTED. Defendant Rick Rosentreter is hereby permanently enjoined from making, using, selling, transferring, offering to sell or transfer, or handling any soybean or other seed (e.g., corn) containing Monsanto's patented biotechnologies without Monsanto's express permission.

## III. DAMAGES

### A. Legal Standard

In the context of a default judgment, while the Court accepts as true the facts alleged in the Complaint relating to liability, facts relating to the amount of damages must be proved. Yang, 37 F.3d at 286.

### B. Analysis

1. Compensatory Damages

The amount of damages in a patent infringement case must be "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. A reasonable royalty "may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." Rite–Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1554 (Fed.Cir.1995). An established royalty is the royalty the patentee uniformly receives when it licenses its invention to others for use comparable to the defendant's infringing use. Monsanto Company v. McFarling, 488 F.3d 973, 979 (Fed.Cir.2007). The hypothetical negotiation approach "requires the court to envision

the terms of a licensing agreement reached as a result of a supposed meeting between the patentee and the infringer at the time the infringement began." Rite–Hite Corp., 56 F.3d at 1554.

In this case, no production contract existed between Plaintiff and Defendant. Therefore, the Court determines a hypothetical contractual price, based on Plaintiff's relevant production contract with Marty Kirbach.

At the hearing on Plaintiff's motion, Plaintiff established that, as of September 1, 2014, the retail price for Asgrow 4632 was $67.00 per commercial unit (where one unit equals 140,000 seeds). Plaintiff offered a 12% wholesale discount ($8.04/unit). Plaintiff's witness Jason Wildman, a site lead at Monsanto's production facility in Centralia, Illinois, testified that Plaintiff paid Kirbach a contract price of $10.60 per commercial unit for the seed. Mr. Wildman further testified that Plaintiff paid Kirbach a premium of 46 cents per commercial unit for good quality. Finally, Plaintiff incurs a processing cost of $1.00 per commercial unit at its Centralia facility. These figures establish that the value of a commercial unit of Asgrow 4632 in September 2014 was $46.90.

Plaintiff also proffered evidence that the Kirbach contract produced 41,236 commercial units of seed. Therefore, the total value of which Defendant deprived Plaintiff is $1,933,968.40. Plaintiff's compensatory damages, calculated as reasonable royalty damages, is therefore $1,933,968.40.

2. Enhancement

Upon a finding of willful infringement, the Court may "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Court in Read Corp. v. Portec, Inc., concluded that the "paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." 970 F.2d 816, 826 (Fed. Cir. 1992). The court identified nine factors that must be considered in determining the culpability of a defendant's conduct: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness

of the case; (6) duration of the defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. Id. at 827.

Here, Defendant both sold and replanted the seed when Defendant knew of the patent protection and that selling and replanting was prohibited. Saving and re-using the seed has been considered to be tantamount to copying plaintiffs' technology. See Hargrove, 2011 WL 5330674, at *4 (assessing an enhancement of three times the total damages amount because defendant saved and re-used the seed and engaged in misconduct during litigation by preventing plaintiff's discovery as to the nature of defendant's infringement and defendant's financial condition). Defendant also engaged in misconduct during litigation by refusing to comply with this Court's discovery orders and by making misstatements to Plaintiff and to this Court as to the whereabouts of pertinent evidence. The egregiousness of Defendant's prolonged infringement and sanctionable court conduct warrants a damages enhancement of three times the total compensatory damages amount.

3. Prejudgment Interest

The Court finds that Plaintiff is entitled to prejudgment interest on its compensatory damages award. In patent cases, "[p]rejudgment interest should ordinarily be awarded." General Motors Corp. v. Devex Corp., 461 U.S. 648, 656 (1983).

The Court applies a rate of 9%, consistent with the rate used by other courts and Illinois's statutory prejudgment interest rate. 735 ILCS 5/2-1303; see, e.g. Hargrove, 2011 WL 5330674, at *5; Domestic Fabrics Corp. v. Sears, Roebuck & Co., 326 F. Supp. 2d 694, 703 (E.D. N.C. 2004) (noting that courts look to a number of sources, including state statutes, in determining the rate and method for calculating prejudgment interest; awarding prejudgment interest on reasonable royalty damages, but not on enhanced damages under 35 U.S.C. § 284).

Prejudgment interest accrues from the date on which Defendant should have made royalty payments to the date the Court issued the judgment. General Motors Corp., 461 U.S. at 656. Plaintiff has not specified the date on which the royalty payments should have begun. However, Plaintiff alleges in the Amended Complaint that in Fall 2014, Kirbach harvested seeds that he stored in bins on Defendant's land. Am. Compl. ¶ 31. Accordingly, the

Court will fix the starting date for prejudgment interest at October 1, 2014.  See Hargrove, 2011 WL 5330674, at *5.

4. Attorneys Fees and Costs

The Court finds that the infringement was willful and that Defendant engaged in litigation misconduct.  Therefore, the Court finds this case to be exceptional under 35 U.S.C. § 285 and that Plaintiff is entitled to recover its attorneys' fees.  Similarly, Plaintiff is entitled to recover its costs expended in this case pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1).

The Court will determine the amount of attorneys' fees and costs to be awarded after Plaintiff submits a verified statement detailing the fees and costs incurred in this matter.  See 28 U.S.C. § 1924; Fed. R. Civ. P. 54(d).

## C.  Conclusion

Plaintiff is awarded compensatory damages in the amount of $1,933,968.40.  An enhancement of three times the compensatory damages amount is applied, such that Plaintiff is entitled to enhanced damages totaling $5,801,905.20.  Plaintiff is awarded prejudgment interest on the compensatory damages at a rate of 9% beginning on October 1, 2014, and accruing until the Court enters

judgment in this case. Plaintiff is also awarded reasonable attorneys' fees and costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Entry of Permanent Injunction (d/e 63) is GRANTED. It is hereby ORDERED that Defendant Rick Rosentreter is permanently enjoined from making, using, selling, transferring, offering to sell or transfer, or handling any soybean or other seed (e.g., corn) containing Monsanto's patented biotechnologies without Monsanto's express permission.

It is further ordered that Plaintiff shall file a statement of attorneys' fees and costs, supported by all necessary affidavits and documentation, on or before November 1, 2017. A separate judgment in accordance with this Opinion and Order will be entered following the Court's receipt of Plaintiff's statement of fees and costs.

**ENTERED: September 27, 2017**

**FOR THE COURT:**                                <u>s/ Sue E. Myerscough</u>
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**